# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

CRAIG THIESSEN, and
CANYON DEL BUEY, LLC,
      Plaintiffs,

v.

                                                  Civ. No. 20-364 GJF/GBW
                                                  (lead case)

THE UNITED STATES OF AMERICA,
      Defendant.
_____

UNITED STATES OF AMERICA,
      Plaintiff,

v.

                                                  Civ. No. 20-727 GJF/GBW
                                                  (consolidated case)

CANYON DEL BUEY LLC, CRAIG
THIESSEN, and LANCE THIESSEN,
*individually and as manager of Canyon
del Buey, LLC*,

         Defendants.

## MEMORANDUM OPINION AND ORDER ON
## DEFENDANT'S MOTION TO DISMISS IN CASE NO.
## 20CV364 AND PLAINTIFFS' MOTION TO FILE SURREPLY

       This litigation involves the ownership of a large grazing allotment located on the Apache

National Forest in Catron County, New Mexico.  Plaintiffs insist that the allotment is privately-

owned and has been for decades, thereby relieving them of any obligation to obtain a cattle grazing

permit from the United States Forest Service ("USFS") or comply with the permit's requirements.

Defendant disagrees, contending that the grazing allotment is instead the property of the federal

government and anyone wishing to ranch cattle on it must obtain a permit and thereafter follow its

terms.  This lawsuit arose when the USFS revoked Plaintiffs' permit, refused to re-issue it, and

barred them from ranching the contested allotment.

       But first things first.  Defendant has moved to dismiss Case No. 20cv364 with prejudice

[ECF 24], asserting that this Court is without jurisdiction to referee the debate over ownership of

the allotment because Plaintiffs waited much too long to file this action.  After that motion was fully briefed [ECFs 27 and 30], Plaintiffs moved for leave to file a surreply [ECF 37], arguing that Defendant improperly had made new arguments in its reply brief to which Plaintiffs had been given no opportunity to respond. That motion, too, is now fully briefed.[1]

After carefully reviewing the record, the parties' briefing, and controlling law, the Court will first **DENY** the Motion for Leave to File Surreply and then **GRANT** the Motion to Dismiss. Consequently, the Court will **DISMISS** Case No. 20cv364 **WITH PREJUDICE**.

## I.   MOTION FOR LEAVE TO FILE SURREPLY

Represented by new counsel retained after filing their response brief, Plaintiffs have moved to file a surreply pursuant to Local Rule 7.4(b).  ECF 37.  Plaintiffs argue that they should be permitted to address Defendant's "characterizations" of certain positions that Plaintiffs took in their response brief.  Plaintiffs assert that these "characterizations" constituted "new material" for which a surreply is authorized.  *Id.* at ¶¶ 4-8.  In addition, Plaintiffs contend that Defendant's specific criticism of one of Plaintiffs' arguments (specifically, whether the Complaint satisfied the first of three "pleading with particularity" requirements set forth in the Quiet Title Act (QTA), 28 U.S.C. § 2409a) also constitutes "new material."  *Id.* at ¶¶ 9-10.

For its part, Defendant insists that its Reply does nothing other than to "properly respond to arguments raised in Plaintiffs' Response."  ECF 38 at 1, 14.  Defendant maintains that its criticisms of Plaintiffs' arguments "do[] not provide the exceptional circumstances necessary for the filing of a surreply" because such criticisms neither amount to "new evidence" nor "new legal arguments."  ECF 38 at 1-2, 4-14 (quotations omitted).

---

[1] After the United States responded in opposition [ECF 38] to Plaintiffs' Motion for Leave to File Surreply, Plaintiffs did not further reply.  Because more than "fourteen (14) calendar days after service of [Defendant's] response" have elapsed, the Court considers this motion fully briefed.  D.N.M.LR-Civ.7.4(a).

Having reviewed and re-reviewed Plaintiff's response and Defendant's reply, the Court concludes that the reply does not raise "new material," which the Tenth Circuit has defined as "new evidence" or "new legal arguments," *Green v. New Mexico*, 420 F.3d 1189, 1196 (10th Cir. 2005). *See* ECF 30 at 1-12. The Court further concludes that this is not a close question. The criticisms in Defendant's reply do not, for example, refer to new exhibits omitted from its original motion. Nor did Defendant smuggle into its reply brief new theories of relief that should in fairness have been included in the opening motion. *See id.* Instead, the Court construes Defendant's criticisms as simply "present[ing] matters that … relate [only] to [Plaintiffs'] response," Fed. R. Civ. P. 27(a)(4)—particularly by pointing out defects in that response. ECF 30 at 1-12*; see also Rowley v. APD Detective Kevin Morant*, No. 10cv1182-WJ/GBW, 2014 WL 12656606, at *2 (D.N.M. Jun. 27, 2014) (observing that "[a] reply that simply 'points out the defects' in the response does not introduce new material" (quoting *Green*, 420 F.3d at 1196-97)).[2] Consequently, the Court will **DENY** Plaintiffs' Motion for Leave to File Surreply and will restrict the scope of its analysis to the issues raised only in Defendant's Motion to Dismiss [ECF 24], Plaintiffs' response [ECF 27], and Defendants' reply [ECF 30].[3]

---

[2] Furthermore, even if in some abstract or metaphysical sense Defendant's reply could be interpreted to contain some sort of "new material," this Court will "not rely on [such] new material in reaching its decision." *Green*, 420 F.3d at 1196; *see also id.* (observing that the district court "does not abuse its discretion by precluding a surreply [with new material]" so long as the court's decision "[did] not rely on the new material"); Section V (Analysis), *infra*.

[3] The Court recognizes that Plaintiffs' newly-retained counsel was not responsible for filing Plaintiffs' response to the motion to dismiss. The Court can well appreciate the impulse that new counsel may feel to bolster, repackage, and refine the legal arguments previously put forth on behalf of his clients. Nonetheless, the mere fact that new counsel may have briefed the response differently (or better) does not entitle Plaintiffs to what would amount to another bite at the briefing apple. And that Plaintiffs have seen fit to accuse their litigation adversary of painting outside the lines with its reply brief – when Defendant did nothing of the sort – is unfortunate.

## II.  GENERAL FACTUAL BACKGROUND[4]

In 1899, "the United States withdrew from the public domain the land that became the Gila National Forest and Apache National Forest."  *Diamond Bar Cattle Co. v. United States*, 168 F.3d 1209, 1210 (10th Cir. 1999).  With over 3.3 million acres in New Mexico alone, these forests are a place of "soaring peaks and rugged canyons … and embrac[e] what may be the first formally designated wilderness area in the country."  *George v. United States,* 672 F.3d 942, 943 (10th Cir. 2012) (also observing that this land was "[f]irst set aside by presidential decree in 1899").  These national forests are also home to the Mexican gray wolf (*Canis lupus baileyi*), or "lobo," the "smallest, rarest, and most genetically distinct subspecies of gray wolf."  *WildEarth Guardians v. United States Forest Serv.*, 668 F. Supp. 2d 1314, 1319-20 (D.N.M. 2009).  Due to the "large-scale extermination" efforts that began in the 1870s to eradicate these wolves—"in large part because they were infamous killers of livestock"—they were "completely extirpated from the Western United States."  *New Mexico Cattle Growers Ass'n v. United States Fish & Wildlife Serv.*, 1999 U.S. Dist. LEXIS 19096, at *7-8 (D.N.M. 1999).  In the late 1990s, however, the United States Fish and Wildlife Service began reintroducing the Mexican gray wolf into these national forests. *WildEarth Guardians*, 668 F. Supp. 2d at 1320.

---

[4] This section sets forth the relevant factual assertions from Plaintiffs' Second Amended Complaint [ECF 36].  Aside from one crucial exception—the dispositive jurisdictional question of what Plaintiffs and their predecessors knew or should have known before April 21, 2008, *see infra* Section IV(a)—the Court otherwise "accept[s] as true all well-pleaded factual allegations in [Plaintiffs' Complaint] and view[s] them in the light most favorable to [Plaintiffs]." *Garling v. United States EPA*, 849 F.3d 1289, 1292-93 (10th Cir. 2017) (quotation and citation omitted).

### A. The Mexican Grey Wolf Incident

Perhaps not surprisingly, the reintroduction of these wolves has caused problems for livestock owners in the American Southwest.[5]  Plaintiff Craig Thiessen[6] owns a significant number of livestock—"some 286 mother cows and 143 calves"—that currently graze in the Apache National Forest on an approximately 48,000 acre grazing allotment, the "Canyon del Buey Allotment (#00905)" ("Allotment"), that the USFS administers.  ECFs 24 at 7, 18, 26; 24-18; 36 at 2, 6, 9.  The USFS issued Craig Thiessen a term grazing permit for this Allotment in September 2011.  ECFs 24 at 9; 36 ¶ 34.[7]  In February 2015, while his permit for this Allotment was still active, Craig Thiessen "knowingly took a Mexican gray wolf" by "captur[ing] [it] in a leg hold trap on [his] grazing allotment … and hit[ting] it with a shovel."  ECF 24-1 at 3 (also containing Craig Thiessen's admission that he "knew that the animal … was a Mexican gray wolf because it bore a tracking collar affixed to all Mexican gray wolves in the area").  Craig Thiessen apparently struck the wolf with a shovel because he "was afraid that if [he] didn't hit it with a shovel, it would kill [him] when [he] released it."  *Id.*

---

[5] *See* Susan Montoya Bryan, *Endangered Mexican Wolves Blamed for More Livestock Deaths*, Associated Press News (May 27, 2019), https://apnews.com/article/334f756ddcba4682a3e7391242decdeb (observing that (1) "the number of cows and calves killed by Mexican gray wolves" in the American Southwest "has skyrocketed, aggravating an already tenuous relationship between U.S. wildlife managers, environmentalists and rural residents;" (2) "[t]here are at least 131 of the predators in the mountain ranges spanning southwestern New Mexico and southeastern Arizona;" (3) "the endangered wolves have been blamed for the deaths of 88 domestic animals in New Mexico and Arizona in [just] the first four months of [2019];" and (4) "several ranchers … are already being run out of business" due to these wolves).

[6] Because Case Nos. 20cv364 and 20cv727 are now consolidated, and because the cases involve brothers with the same last name, the Court will refer to them by their first and last names instead of "Mr. Thiessen."

[7] The USFS originally issued this permit to "Plaintiff Craig Thiessen, Lance Thiessen, and Kaylin R. Thiessen" in September 2011, but "[t]he permit was waived to Craig Thiessen individually shortly thereafter, and Craig Thiessen was listed as the sole permittee of record on the Canyon del Buey term grazing permit from May 21, 2012 to November 21, 2017."  ECF 24 at 9.  Craig Thiessen purchased a 40-acre base property (ranch) and the 48,093-acre Canyon del Buey Allotment for $750,000.  ECFs 24 at 18; 36 ¶ 34.

Nearly two years later, in January 2017, Craig Thiessen asked the USFS to "transfer the permit to the newly formed Canyon del Buey LLC 'as he had been indicted by the [United States Fish and Wildlife Service] and they were coming after his permit.'" ECF 24 at 9.  Craig Thiessen's efforts succeeded in November 21, 2017, when the USFS transferred his grazing permit to Canyon del Buey LLC.  ECFs 24 at 7; 24-18; *see also* ECF 36 ¶ 33 (noting that Craig Thiessen and his brother Lance own this company).[8]

### B. Cancellation of the Grazing Permit

In  May 2018, Craig Thiessen pled guilty in this Court to "knowingly taking threatened wildlife" and was sentenced to one year of unsupervised probation and restitution in the amount of $2,300.  ECFs 24-1; 24-2; *see also USA v. Thiessen*, 2:18po2123-CG-1.[9]  In November 2018, the USFS cancelled the LLC's permit because of Craig Thiessen's conviction as well as the apparent "discovery of false materials in the permit application … relating to the creation of the LLC."  ECFs 24 at 8; 36 ¶ 37; *see also* ECF 1 (19cv779) at 4 (noting that the permit cancellation was based on what the government viewed as a "misrepresent[ation] … that Craig Thiessen was not a member of the LLC").

---

[8] The New Mexico Secretary of State's website indicates that this company (business identification number 5367328) was organized on January 12, 2017, that Craig Thiessen is the "Organizer," and that his brother Lance is a "Member" and "Manager."  *See* New Mexico Secretary of State – Business Portal, available at www.sos.state.nm.us.

[9] Defendant incorrectly asserts that Craig Thiessen became a "convicted felon" when he pled guilty to this crime.  ECF 24 at 7.  His crime of conviction, however, was not a felony but rather a petty misdemeanor under 16 U.S.C. §§ 1538(a)(1)(G), 1539(j)(2)(C), and 1540(b)(1).  *See* Information, 18po2123-CG-1, ECF 3.  For purposes of the Motion to Dismiss, the Court accepts as true Craig Thiessen's assertions about the facts giving rise to his conviction, including that (1) he only "inadvertently" captured the wolf in a leg trap; (2) he merely "held [the wolf] back with a shovel in order to release [the wolf] alive;" (3) the wolf survived; and (4) due to "poor advice," he "mistakenly" pled guilty to this offense.  ECF 36 ¶¶ 35-36; *but cf.* ECF 24-1 at 7, 9 (Craig Thiessen affirming that his guilty plea was voluntary, that he understood what he was pleading guilty to, and that he pled guilty "because [he] [was] in fact guilty"); Jessica Johnson, *NM Needs to Hold Brutal Wolf Killer Responsible*, Albuquerque Journal (Jun. 28, 2019), www.abqjournal.com/1334073/nm-needs-to-hold-brutal-wolf-killer-responsible.html (observing that the young male wolf Craig Thiessen struck—"Mexican wolf No. 1385 of the Willow Springs pack … named 'Mia Tuk' by an Albuquerque schoolchild"—"wasn't just hit with a shovel" but was "brutal[ly] kill[ed]" and noting that subsequent "[m]edical examinations of his body showed he was bludgeoned so hard as to shatter his lower jaw and dislocate his teeth," potentially "contradict[ing] [Mr.] Thiessen's claim he only acted to briefly stun [the wolf] in order to safely release it from the trap").

Plaintiffs administratively appealed the permit cancellation but were unsuccessful.  ECF 36 ¶ 44.  In August 2019, after exhausting their administrative remedies, Lance Thiessen and the LLC filed suit in this Court.  *See* ECF 1 (19cv779).  That suit alleged that "Lance Thiessen [was] the sole member of [the] LLC" and that—as the "surface owner … of the land area enclosed within the [Canyon del Buey] Allotment"—Lance and the LLC could prevent the "forced removal of livestock from *their* … Allotment."  *Id.* at 2-3 (emphasis added).  Although their complaint referred to the Allotment as Lance and the LLC's "surface property right," the complaint did not seek to quiet title to this alleged property right.  *See id.* at 1-5.  Instead, it sought only judicial review of "the Administrative Appeal decision … [including] the appeal record for the cancellation of [their] Grazing Permit"—and a preliminary injunction "preventing the removal of [the livestock] from the grazing allotment."  *Id.* at 5.  In March 2020, however, the Court dismissed that lawsuit because Lance and the LLC never properly served the defendants.  ECF 27 (19cv779).

### C.  Plaintiffs' Quiet Title Action

Having retained different counsel, Craig Thiessen and the LLC filed the instant suit in April 2020.  ECF 1 (Case No. 20cv364).  This suit, however, does not challenge the administrative decision cancelling the LLC's permit.  Instead, its sole cause of action is to "quiet title" to the Allotment.  *Id.* at 8-9.  Specifically, the Second Amended Complaint (hereinafter "Complaint") requests that the Court declare that "under the Quiet Title Act, 28 U.S.C. § 2409a[,] [the] LLC is the surface owner of the Canyon Del Buey Grazing Allotment by operation of specific legislative grants of Congress."  *Id.* at 9.  The Complaint (which now asserts that both Craig and Lance Thiessen own the LLC) also seeks injunctive relief that would allow Craig Thiessen's cattle to continue grazing on the Allotment.  ECF 36 (Second Amended Complaint) at 6, 9.

In the Complaint, Plaintiffs allege that the Allotment is their "private real property"—i.e., that they "hold legal and valid title" to it as "surface estate fee-title owner[s]" who may "fully utilize the value of the land" for "all agricultural and ranching purposes." *Id.* at pp. 1-2 and ¶¶ 4, 8-9, 14, 17-18, 25, 32, 40-47.[10]  Plaintiffs further allege that such "vested property rights" are "valid existing rights that *predated* the Gila National Forest." *Id.* at ¶ 18, 40, 47 (emphasis added). The Complaint then implies that, as preexisting private property, the Allotment never became national forest land—or did so only to a limited extent (e.g., only as to its *subsurface* mineral rights). *See id.* at ¶¶ 17-28, 40; *see also* ECF 27 at 1-3.  Instead, Plaintiffs allege that—from the late 1800s until today—the *surface* of the Allotment has remained private property and continually carried with it "valid existing rights" for its owners to use that surface for any ranching or agricultural endeavor, including the grazing of livestock.  ECF 36 ¶¶ 9, 23, 40; *see also* ECF 27 at 1-9.

In July 2020, before responding to Plaintiffs' Complaint in Case No. 20cv364, Defendant filed a separate lawsuit against the Thiessens and the LLC, alleging that they have been trespassing on National Forest System land since August 31, 2019, the date on which the USFS required the removal of Craig Thiessen's livestock.  ECF 1 (20cv727) at 1-3.  In that suit, Defendant seeks, *inter alia*, "a writ of ejectment" and appropriate authorization for "officers of the United States, including the U.S. Marshal[] and USFS law enforcement officials, to physically remove [the]

---

[10] Although Plaintiffs often refer to the Allotment as "their" (i.e., Craig Thiessen and the LLC's) private property, *see id.* at pp. 1-2 and ¶¶ 4, 8, 40, 46, they also refer to it as solely the LLC's private property, *see id.* at p. 9 and ¶¶ 17-18, 32, 44.  In addition, the first two iterations of Plaintiffs' Complaint [ECFs 1, 15] referred to their alleged property right as "usufructuary"—i.e., as "[a] right *for a certain period* to use and enjoy the fruits of *another's property* without damaging or diminishing it."  Black's Law Dictionary (11th ed. 2019) (emphasis added).  Plaintiffs, however, disagreed with their counsel over this "usufructuary" characterization and once again retained new counsel, who filed the instant Complaint [ECF 36].  The instant Complaint has "remove[d] the word 'usufructuary' from the four places that it occur[red]" and is otherwise identical to its immediate predecessor [ECF 15].  ECF 34 ¶ 2.  In addition, because the instant Complaint was filed *after* the parties' briefing on Defendant's motion to dismiss [ECF 24], the parties have agreed that the briefing will "transfer to the [instant] Complaint, as to avoid having to re-brief the issue or cause any undue prejudice or delay."  ECF 34 ¶ 3.

livestock from NFS [National Forest System] lands" if Plaintiffs and their cattle do not immediately vacate the National Forest System lands. *Id.* at 16.

In August 2020, Defendant responded to Plaintiffs' Complaint in Case No. 20cv364 by filing the instant Motion to Dismiss. ECF 24.

## III. PARTIES' PRIMARY ARGUMENTS

Defendant argues that the QTA's statute of limitations bars Plaintiffs' claim because "Plaintiffs and their predecessors in interest 'knew or should have known' that the United States claimed a conflicting interest in the Canyon del Buey Allotment more than twelve years (indeed, more than a century) prior to commencement of this litigation." ECF 24 at 1-2. Of the "plethora of [available] material" that supports this argument, *id.* at 14, Defendant sets forth several examples, which themselves are supported with fifteen separate exhibits that include:

(1) Publications in the Federal Register from 1977 that establish an "allotment" as a designated area of land—on "National Forest System lands" or "other lands under Forest Service control"—that may be used for livestock grazing if "authorized by a grazing or livestock use permit," 36 C.F.R. §§ 222.1, 222.2, 222.3(a); *see also* §§ 222.3(a), 261.2, 261.7(a)-(b) (prohibiting the grazing of livestock on allotments without such permit); § 222.3(b) (noting that such permits "convey no right, title, or interest held by the United States in any lands or resources"). ECF 24 at 12-14.

(2) Two term grazing permits for the Canyon del Buey Allotment that the USFS issued to Plaintiffs' predecessors authorizing them to graze their livestock "upon lands owned or controlled by the United States within the Apache National Forest" (issued in 1948) and "upon lands administered by the Forest Service within the Gila[11] National Forest" (issued in 1984). *Id.* at 14-16, 19 (citing ECFs 24-8; 24-15).

(3) A 2005 application for a term grazing permit for the Canyon del Buey Allotment (by the same predecessor to whom the Forest Service previously granted this same permit) to graze on "National Forest System lands or other lands under Forest Service control." *Id.* at 19 (citing ECF 24-16).

---

[11] The Allotment is located in the Apache National Forest but administered by the Gila National Forest. *See* ECF 24-18 at 1.

(4) Documents showing that the Forest Service "unilaterally" and "extensively and administratively changed the boundaries of the [Canyon del Buey] Allotment over the decades." *Id.* at 16-17 (citing ECFs 24-9 through 24-12).

(5) A 2004 "Environmental Assessment" that was discussed with and provided to the Allotment's permittees and that is "filled with statements that the United States, through the Forest Service, owns and controls the lands comprising the Canyon del Buey Allotment" (e.g., statements referring to the Allotment as "National Forest lands" and "federal lands"). *Id.* at 17-19 (citing ECF 24-13).

Defendant contends that any one of these examples shows that, more than twelve years before filing the instant lawsuit, "Plaintiffs' predecessors in interest knew (and acknowledged) or should have known of the United States' adverse claims of interest in the Forest Service's Canyon del Buey Allotment." *Id.* at 12, 20.

In response, Plaintiffs argue that, "until [Defendant] denied the permit and demanded Plaintiffs' removal from the allotment," they "were not aware that the United States claimed an interest in the surface rights." ECF 27 at 8. Furthermore, they contend that no predecessor in interest objectively should have known that the government's requirement for a grazing permit for the Allotment was adverse to his or her preexisting private property right to use the Allotment's surface for ranching purposes. *Id.* at 6-9. Emphasizing that "the natural cycle of allotments on federal lands was a slow evolving process," Plaintiffs assert that their predecessors would not have understood that the government claimed any "ownership interest" in the land. *Id.* at 6-8. Instead, they would have understood the grazing permits as merely regulating the *manner* in which they could exercise their already "valid existing rights" to graze livestock (e.g., as merely "regulat[ing] the amount of cattle" that could graze on the Allotment). *Id.* at 8-9.

## IV. APPLICABLE LAW

### A.   Federal Rule of Civil Procedure 12(b)(1)

"[F]ederal courts are courts of limited jurisdiction." *Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746 (2019) (quotation omitted). A federal court's "power to hear cases" is defined by "[the] court's subject-matter jurisdiction." *Lightfoot v. Cendant Mortg. Corp.*, 137 S. Ct. 553, 560 (2017) (citing cases). Without "a grant of subject-matter jurisdiction covering the case before it" a court has no "power to adjudicate the case." *Id.* at 560-61 (citing *Pennoyer v. Neff*, 95 U. S. 714, 733 (1878)).

"Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss a claim for lack of subject-matter jurisdiction, mounting either a facial or factual attack." *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 872 (10th Cir. 2020). "A facial attack assumes the allegations in the complaint are true and argues they fail to establish jurisdiction. A factual attack goes beyond the allegations in the complaint and adduces evidence to contest jurisdiction." *Id.* (citing *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1148 n.4 (10th Cir. 2015)).

Defendant's Motion to Dismiss presents this Court with "a factual attack on subject matter jurisdiction." *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). Specifically, the motion seeks—through the introduction of evidence—to establish that "Plaintiffs and their predecessors in interest 'knew or should have known' [before April 21, 2008] that the United States claimed a conflicting interest in the [Allotment]." ECF 24 at 1-2, 27 (Defendant further asserting that this fact deprives the Court of subject-matter jurisdiction); ECFs 24-4 through 24-18 (Defendant presenting fifteen exhibits, totaling over 70 pages, in support of this factual assertion). "When a defendant brings a factual attack, a district court has 'wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts.'" *Id.* (quoting

*Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001)).  "The court's exercise of such discretion does not convert a Rule 12(b)(1) motion into a summary judgment motion unless 'resolution of the jurisdictional question is intertwined with the merits.'"  *Id.* (quoting *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995)).  Furthermore, [w]hen reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations."  *Holt*, 46 F.3d at 1003.

Consequently, to the extent that Plaintiffs' Complaint alleges that neither Plaintiffs nor their predecessors knew or should have known before April 21, 2008, of a conflicting interest held by the government, *see* ECFs 27 at 6-9; 36 at ¶¶ 18, 49, "[this Court] may not presume the truthfulness of [such] factual allegations."  *Holt*, 46 F.3d at 1003.  As mentioned, however, the Court "accept[s] as true" all *other* "well-pleaded factual allegations in [Plaintiffs' Complaint] and view[s] them in the light most favorable to [Plaintiffs]."  *Supra* note 4 (quoting *Garling*, 849 F.3d at 1292-93).

**B.  Quiet Title Act's Waiver of Sovereign Immunity**

"It is an established principle of jurisprudence in all civilized nations that the sovereign cannot be sued in its own courts, or in any other, without its consent and permission."  *Alden v. Maine*, 527 U.S. 706, 745 (1999) (quoting *Beers v. Arkansas*, 61 U.S. 527, 529 (1858)).  Thus, "[w]hen the United States consents to be sued, the terms of its waiver of sovereign immunity define the extent of the court's jurisdiction."  *United States v. Mottaz*, 476 U.S. 834, 841 (1986); *see also Pueblo of Jemez*, 790 F.3d at 1151 (observing that if sovereign immunity is not waived, the courts are "depriv[ed] … of subject-matter jurisdiction" (quotation omitted)).

Under the QTA, the United States has "waive[d] [its] sovereign immunity from[] a particular type of action, known as a quiet title suit: a suit by a plaintiff asserting a 'right, title, or

interest' in real property that conflicts with a 'right, title, or interest' the United States claims."
*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012)
(quoting 28 U.S.C. § 2409a(d)); *see also id.* at 217-18 (observing that an "action to quiet title" is
"[a] proceeding to establish a plaintiff's title to land by compelling the adverse claimant to
establish a claim or be forever estopped from asserting it" (quoting Black's Law Dictionary 34
(9th ed. 2009)). The QTA "provide[s] the exclusive means by which adverse claimants [can]
challenge the United States' title to real property." *Id.* at 219 (quoting *Block v. North Dakota*, 461
U.S. 273, 286 (1983)).

### C.   Quiet Title Act's Statute of Limitations

The QTA contains a twelve-year statute of limitations:

> Any civil action under this section [28 U.S. Code § 2409a], except for an action
> brought by a State, shall be barred unless it is commenced within twelve years of
> the date upon which it accrued. Such action shall be deemed to have accrued on
> the date the plaintiff or his predecessor in interest *knew or should have known* of
> the claim of the United States.

28 U.S.C. § 2409(g) (emphasis added); *Pueblo of Jemez*, 790 F.3d at 1151. This twelve-year rule
establishes a "jurisdictional prerequisite to suit under [the QTA]" and is "strictly construed in favor
of the United States." *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 599 F.3d 1165,
1175-76 (10th Cir. 2010) (quotations and citations omitted).

The Tenth Circuit has explained that "the trigger for starting that twelve-year clock running
is an exceedingly light one," as it begins as soon as a predecessor "*objectively* should have known
about the government's claim." *George v. United States*, 672 F.3d 942, 944 (10th Cir. 2012)
(emphasis in original). Thus, "[t]he limitations period isn't triggered only when the government
acts to *enforce* its claim" but also by "the government's claim [itself]—by its *assertion* of 'some
interest adverse' to the plaintiff or her predecessor." *Id.* at 946 (emphasis in original) (quoting

13

*Knapp v. United States*, 636 F.2d 279, 283 (10th Cir. 1980)).  "[S]imply put, the limitations period is triggered when a landowner has reason to know that the government claims some type of adverse interest in that land."  *Rio Grande Silvery Minnow*, 599 F.3d at 1177.

Furthermore, "[t]he merits of that claim … are irrelevant," and "an appreciation of the full contours of the … claim isn't even needed."  *George*, 672 F.3d at 946-47 (quotation omitted).  In fact, "the QTA's limitations clock starts running as soon as the federal government publishes a property claim in the Federal Register and a QTA plaintiff or her predecessor in interest is 'subject to or affected by' it."  *Id.* at 944-45 (quoting 44 U.S.C. § 1507).  "A tough rule to be sure," but one that results from Congress's "considerable constitutional powers" to determine "when and under what conditions to waive sovereign immunity and allow individuals to tap the public fisc."  *Id.* at 945.

## V.  ANALYSIS

As explained more fully below, Defendant has sovereign immunity from, and the Court lacks subject-matter jurisdiction over, Plaintiffs' suit in Case No. 20cv364 because Plaintiffs' predecessor in interest objectively should have known long before April 21, 2008, that the federal government asserted some type of adverse interest in the Allotment.

The Court finds that Plaintiffs' quiet title suit was not "commenced within twelve years of the date upon which it accrued."  28 U.S.C. § 2409a(g).  In fact, the record evidence makes clear beyond dispute that a suit to quiet title in the Allotment accrued at least *decades*—if not more than a century—before Plaintiffs filed the instant suit.  Well more than twelve years before this lawsuit began, Plaintiffs' predecessor in interest "ha[d] reason to know that the government claim[ed] *some type* of adverse interest in that land."  *Rio Grande Silvery Minnow*, 599 F.3d at 1177 (emphasis added).  That the United States set aside the land encompassing this Allotment in 1899

14

and turned it into a national forest (i.e., federal government property) was surely some type of interest that a (yet-to-be-identified) landowner of this Allotment would have recognized as adverse—particularly a landowner with a preexisting private property right to use the Allotment for any ranching or agricultural purposes.

But even assuming that the United States somehow carved out this Allotment from what it considered and held out as national forest land over a century ago, the record contains fifteen exhibits (totaling over 70 pages) establishing that—at least multiple decades ago—Plaintiffs' predecessors *should have known* the government was asserting some type of adverse interest. *See* ECFs 24-4 through 24-18 (Defendant's Exhibits D through R). As illustrated in Section III, *supra*, these exhibits includes (1) grazing permits dating back to at least 1948 treating the Allotment as "land[] owned or controlled by the United States," (2) Federal Register notices in 1977 further clarifying that such allotments were indeed owned or controlled by the United States, (3) boundary changes that the United States unilaterally made to the Allotment, and (4) a 2004 environmental assessment again reminding Plaintiffs' predecessors that the Allotment was "federal land." In relying on the evidence set forth in these fifteen exhibits—the authenticity, validity, and meaning of which Plaintiffs do not dispute—the Court finds that Plaintiffs' pre-2008 predecessors had reason to know that the government claimed some type of adverse interest in the Allotment. *See also Baker*, 979 F.3d at 872 (observing that the Court has "wide discretion" to consider such evidence in "resolv[ing] disputed jurisdictional facts"); *cf.* ECF 30 at 3 (Defendant correctly observing that Plaintiffs' claims are "not factually supported with a single exhibit").[12]

The Court must therefore reject Plaintiffs' contention that neither they nor their predecessors could or should have known—during the many decades in which they obtained

---

[12] In addition to not attaching any documentary evidence of their own, Plaintiffs do not object to the Court's consideration of the evidence offered by the United States. *See* ECFs 27, 36.

grazing permits—that the government was doing anything more than merely regulating the manner in which they could exercise their preexisting private property rights to graze livestock. ECF 28 at 8-9. The evidence before the Court shows that the federal government was not just acting as some sort of voluntary homeowners' association for ranchers when it issued these permits. Indeed, the government repeatedly made known—throughout the decades—that it "owned or controlled" this Allotment as "federal land" and that it had a right to both authorize grazing on this Allotment (by issuing a permit) or entirely prohibit grazing on this Allotment (by withholding of a permit). *See* ECFs 24-4 through 24-18; Section III, *supra*. Such an assertion of ownership and control is directly at odds with an alleged preexisting private right to use the Allotment's surface for any ranching purpose. On the evidence before it, the Court is compelled to conclude that Plaintiffs' pre-2008 predecessors objectively should have known that the government claimed some type of adverse interest in the Allotment. Thus, "the trigger for starting [the] twelve-year clock running," *George*, 672 F.3d at 944, was activated well more than twelve years before Plaintiffs commenced their suit.

In sum, the Court finds that Plaintiffs' quiet title suit was not "commenced within twelve years of the date upon which it accrued," 28 U.S.C. § 2409a(g), and holds that the QTA therefore bars their suit.[13]

## VI. CONCLUSION

For the foregoing reasons, the Court holds that the QTA's statute of limitations bars Plaintiffs' suit. Therefore, Defendant is immune from, and this Court lacks jurisdiction over, Plaintiffs' action to quiet title to the Allotment. In other words, this Court has no power to

---

[13] Given the Court's resolution of Defendant's statute of limitations argument, the Court does not reach Defendant's alternative contention that the Second Amended Complaint violates the pleading particularity standard required by the QTA. On that question the Court expresses no opinion.

adjudicate an action by Plaintiffs to "challenge the United States' title to [this] real property." *Patchak*, 567 U.S. at 219.

   **IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Leave to File Surreply [ECF 37] is **DENIED**.

   **IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss in Case No. 20cv364 [ECF 24] is **GRANTED**.

   **IT IS FINALLY ORDERED** that Case No. 20cv364 is **DISMISSED WITH PREJUDICE**.

   **SO ORDERED.**

                                   _____
                                   THE HONORABLE GREGORY J. FOURATT
                                   UNITED STATES MAGISTRATE JUDGE
                                   *Presiding by Consent*